| | | | |
|---|---|---|---|
| | AUSA: | Timothy E. Garcia | Telephone: (313) 226-9522 |
| AO 91 (Rev. 11/11)  Criminal Complaint | Agent: | Sarah Soles | Telephone: (810) 989-5056 |

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>Juri RONDANIN | Case: 2:26−mj−30336<br>Assigned To : Unassigned<br>Assign. Date : 6/4/2026<br>Description: RE: JURI RONDANIN<br>(EOB) |

Case No.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 1, 2026 _____ in the county of _____ St. Clair _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1325 | Illegal Entry into the United States |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sarah Soles, Border Patrol Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___ June 4, 2026 ___

_____
*Judge's signature*

City and state: ___ Detroit, MI ___

Hon. David R. Grand, U.S. Magistrate Judge
_____
*Printed name and title*

**<u>AFFIDAVIT</u>**

I, Sarah A. Soles, declare the following under penalty of perjury:

1.      I am a Border Patrol Agent with the United States Border Patrol, and I have been employed in this capacity since June of 2009. Currently, I am assigned to the Marysville Border Patrol Station.  The facts set forth herein are based upon my personal knowledge as well as information provided by other law enforcement officers to include Border Patrol Agents and record checks of law enforcement databases.  I have also reviewed material from the official immigration file and system automated data relating to Juri RONDANIN, which attests to the following:

2.      Juri RONDANIN is a fifty-six-year-old male, native and citizen of Italy, who claims to have last entered the United States at or near Port Huron, Michigan on June 1, 2026, without being admitted, inspected or paroled by an Immigration Officer.

3.      On June 1, 2026, at approximately 6:46 a.m., Detroit Border Patrol Sector Radio received a call from St. Clair County Dispatch advising that they had a concerned citizen reporting suspicious activity near 100 McMorran Blvd., in the city of Port Huron, Michigan. The caller was fishing in the area and observed a kayak come across the river from Canada. The caller reported that he observed a man exit the kayak from the St. Clair River onto the boardwalk and run up Grand River Ave. The caller's description of the man was that he was possibly Hispanic, wearing black pants with a grey and red hoodie, carrying an orange backpack. Detroit Sector Radio relayed the information received via radio to Marysville Border Patrol Agents.

4.      I, along with several other Marysville Border Patrol Agents, responded to the area and began searching for the subject in question, along with units from the Port Huron Police Department. Border Patrol Agents made contact with the caller, as well as other witnesses near the boardwalk where the subject was last seen. The witnesses stated that they believed the man in the kayak came from the Canadian side of the river. They noted that it was odd seeing someone exit a kayak in that location because there was no landing point or ladder from the water onto the boardwalk. The caller stated that he tried to communicate with the subject as he exited the kayak onto the boardwalk, but

1

he responded in what he thought was another language and ran away. The caller also showed one agent a video on his phone of the kayak that the subject abandoned as it continued to float downriver. The agent noted that the kayak was red with a grey or white bottom.

5. As agents continued to search the area, Detroit Sector Radio advised that they reviewed footage from Remote Video Surveillance Systems (RVSS) in the area. Footage from RVSS revealed a subject kayaking out of Sarnia Bay at 6:23 a.m. Sarnia Bay is in Sarnia, Ontario, Canada, and is a waterfront area across the St. Clair River from Port Huron, Michigan with a marina and parks. The kayaker appeared to be making their way towards the middle of the river which marks the International Boundary between Canada and the United States.

6. At approximately 8:42 a.m., St. Clair County Central Dispatch advised via radio that officers from the Port Huron Police Department were out with a subject they believed to be the subject in question at Blue Water Area Transit Center, located at 720 McMorran Blvd. I responded to the location along with other Border Patrol Agents.

7. When I arrived, I made contact with two Port Huron Police Officers who had the subject in question detained outside the Blue Water Transit Center. The officers stated that the subject spoke limited English and I was handed his Italian passport. I asked the subject, identified as Juri RONDANIN by his passport, if he spoke or understood English. RONDANIN stated that he understood a little English but speaks Italian.

8. I ran preliminary immigration checks on RONDANIN with the information on his passport and found that he had been refused entry into the United States from Canada on May 8, 2024, and had not been issued any immigration documents to allow him to be or remain in the United States since then. There was also no record of RONDANIN entering the United States legally since June of 2007.

9. I asked RONDANIN if he had kayaked across the river that morning and he nodded his head and stated "yes". I asked him if he understood that he was entering the United States illegally and he stated that he did. When asked if he rented the kayak or purchased it, he stated that he bought it.

2

10. One of the Port Huron officers stated that he had seen RONDANIN a little earlier while canvassing the area in his vehicle. He stated that when RONDANIN saw him, he turned in the opposite direction and fled. The officer was unable to relocate RONDANIN until they made contact with him at the bus station. RONDANIN did not disclose where he went or whether he was hiding somewhere before making his way to the bus station.

11. RONDANIN was transported to the Marysville Border Patrol Station by Agent Butler for further investigation and processing.

12. At approximately 9:10 a.m., I was notified that an unoccupied red and grey kayak had been located in the St. Clair River by another agent. The kayak was hung up by debris downriver from where RONDANIN had abandoned his kayak.

13. After leaving the Blue Water Transit Center, I went to the boardwalk where the original caller and two other witnesses were fishing. I showed them a picture of RONDANIN and asked them if it was the man they saw kayak across the river. All three men stated that they believed it was the same man, although they admitted they were surprised at how inaccurate they recalled his clothing description. The caller stated that he was excited when making the call to dispatch and that it all happened so fast, the most prominent detail he remembered is that the man didn't speak English to them and he was in a hurry to get away from them.

14. At the Marysville Border Patrol Station, I contacted Ad Astra for translation services. Through an Italian interpreter, I conducted an interview with RONDANIN. RONDANIN was advised of his Miranda Rights. RONDANIN verbally and with his signature, confirmed that he was willing to be interviewed and make a statement without counsel present. During the interview, RONDANIN admitted to traveling to Toronto, Ontario, Canada from Italy on May 12, 2026, with the intent to enter the United States illegally. RONDANIN stated that he traveled from Toronto to Sarnia, Ontario, where he stayed in a Super 8 Motel until the morning of June 1, 2026. RONDANIN claims that he does not have any family or other contacts in the United States and there was no one that helped him facilitate his illegal entry into the United States. RONDANIN stated that on the morning of June 1,

3

2026, he took the kayak he had purchased in Sarnia to a park and kayaked across the St. Clair River to the United States. RONDANIN stated his intent was to take a bus to Miami, Florida to find work and a place to live.

15. The aforementioned arrest and subsequent detention was an administrative, non-criminal action made pursuant to the authority found in sections 1357, 1225, 1226, and/or 1231 of Title 8, United States Code to arrest and detain any alien entering or attempting to enter the United States, or any alien present in the United States, who is reasonably believed to be in violation of any law or regulation regulating the admission, exclusion, expulsion, or removal of aliens.

16. Review of records from the alien file (A# xxx xxx 909) for RONDANIN and queries in U.S. Department of Homeland Security databases confirm that no record exists of RONDANIN obtaining permission from the Attorney General or the Secretary of the Department of Homeland Security to re-apply for admission to the United States following his Refusal of Admission on May 8, 2024, via the Detroit Windsor Tunnel Port of Entry.

17. Based on the above information, there is probable cause to believe that, on or about June 1, 2026, at or near Port Huron, in the Eastern District of Michigan, Southern Division, Juri RONDANIN, an alien from Italy, entered the United States at a time or place other than as designated by immigration officers, in violation of Title 8, United States Code, Section 1325(a)(1).

_____
Sarah A. Soles, Border Patrol Agent
U.S. Department of Homeland Security

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Hon. David R. Grand
United States Magistrate Judge

June 4, 2026

4